## THE STATE v. HENDRY.

[No. 19,189.    Filed April 2, 1901.]

CRIMINAL LAW.—*Forgery.*—*Alteration of Warehouse Receipt.*— Defendant delivered a quantity of wheat at a grain elevator, which he deposited in the name of the purchaser. A receipt therefor was issued to the seller, showing the quantity of the wheat stored and the names of the buyer and seller, and on the back thereof was written "3 red" to indicate the opinion of the weigher as to the grade of the wheat. *Held*, that the alteration by defendant of the memorandum on the back of the receipt by changing the figure three to a figure two, so as to read "2 red" instead of "3 red," did not constitute forgery within the meaning of §2354 Burns 1894.

From the Steuben Circuit Court. *Affirmed.*

*W. L. Taylor*, Attorney-General, *Willis Rhoads, S. A. Wood, T. R. Marshall, W. F. McNagny* and *P. H. Clugston*, for State.

*W. G. Croxton* and *F. M. Powers*, for appellee.

JORDAN, J.—Appellee was charged by indictment with the crime of forging, by alteration, a certain receipt, and with having fraudulently and knowingly uttered, published, and passed the receipt so forged as genuine. On his motion the court quashed both counts of the indictment, and rendered a judgment discharging him. The State appeals and predicates error upon the ruling of the court in quashing each count of the indictment. The instrument alleged to have been forged by the accused is what is generally known as an elevator receipt for grain and was given by the Lake Shore & Michigan Southern Railway Company to the appellee for the storage of wheat in its elevator or grain house situated at the town of Angola, Steuben county, Indiana. Counsel for appellant and appellee, in their briefs, have correctly summarized the facts set out in the indictment, which summary is virtually as follows: "That the Lake Shore & Michigan Southern Railway Company operates a

railway through the town of Angola, Steuben county, Indiana, and also a grain house or elevator, in connection therewith, at that town. That one Theron Miller was in charge of the grain house, Timothy E. Purinton was agent of the railway company, and Chester Darr was his clerk or assistant. That the method of doing business at the grain elevator, so far as concerned the storage of grain, was, when a seller brought grain for storage in the elevator and shipment over the railway, he informed Miller to whose account, among the dealers at Angola, the wheat was to be stored. Miller weighed the wheat and gave the seller a slip or check, stating the names of the seller and buyer, the number of pounds of wheat, and with the figures No. 2 or 3 red, as indicating his judgment as to the quality or grade of the wheat. The seller took this slip or check to Purinton, the agent of the railway company, or to Darr, who made out the company's receipt, certifying the amount of wheat, red or white, received from the seller, to whose account for transportation to Toledo, Ohio, it had been received, and on the back of the receipt Purinton or Darr, as the case might be, wrote '2 red' or '3 red' as indicating Miller's judgment as to the grade or quality of the wheat; that the purpose of this designation '2 red' or '3 red', on the back of the receipt, was to enable the purchaser to fix the Angola market price of the wheat so stored, and sellers received pay according to this method, in accordance with the grade indorsed on the back of the receipt; that during all the times stated in the indictment, this method was adopted and practiced by all the grain dealers in Angola, and these methods were also known to appellee; that William C. Patterson was one of the grain buyers at Angola; that on the 21st day of August, 1897, appellee delivered at the grain elevator, 3,550 pounds of wheat for Patterson; that Miller weighed it and graded it '3 red' and gave appellee the customary check, indicating the weight, grade, and that it was stored to the account of Patterson; that appellee

took the check to the railway company's office, where Darr, the clerk, who was working under authority of Purinton, agent of the company, made out the receipt for the company and wrote on the back, "3 red", to indicate the opinion of Miller as to the grade of the wheat, as was the custom."

The receipt in question upon which the charge of forgery is founded is as follows: "Check No. 71. Not transferable. No. 429. The Lake Shore & Michigan Southern Railway Company: Angola, Ind., Station, August 21, 1897. Received into this company's grain house at this station, from L. A. Hendry, of Pleasant township, county of Steuben, State of Indiana, for account of W. C. Patterson, 3,550 pounds of red wheat, to be forwarded to Toledo, Ohio, under and subject to the conditions and stipulations of this receipt, viz.: that said grain upon its arrival at Toledo is to be delivered into the company's grain elevators, and not elsewhere, except by special agreement, and while said grain shall remain in said grain house at said station, and after it shall arrive at Toledo in cars ready for delivery into said elevator, the only liability of this company therefor shall be that of warehouseman. This company shall not be bound to forward said grain until instructed to do so, but reserves the right to forward the same at any time without instruction. No transfer of this grain will be made except upon the surrender of this receipt, and in accordance with the rules of this company. This company shall not be held liable for any delay in the transportation or delivery of said grain, or any injury from heat, dampness or for deterioration in quality, or by fire, accident or shrinkage while in possession of the company, unless such delay or injury arises through the negligence of the company. T. E. Purinton, Agent. D. This load delivered at depot by owner. I hereby certify that I was the owner of the wheat specified in this receipt, and that I sold said wheat specified in said receipt to the party named in the receipt. (Signature of seller) L. A. Hendry." On the back of this

receipt was written the following: "3 red." "That on the 24th day of March, 1898, appellee altered, forged and counterfeited this receipt by changing the figure three on the back to a figure two, for the purpose of defrauding Patterson, and getting the price of No. 2 for the wheat that had been graded No. 3; that Patterson had no knowledge of the kind or quality of the wheat, except as indicated by this writing and figure upon the back of the receipt.' That from the 21st day of August, 1897, to the 24th day of March, 1898, there was a difference of eight cents per bushel, between No. 2 and No. 3 red wheat, No. 2 being the higher price."

Counsel for the State contend that the memorandum on the back of the receipt entered into and affected the operation of the latter because it served to disclose to the purchaser of the wheat the grade thereof, and controlled the price to be paid. That the price of "No. 2 red", as shown, was eight cents higher than "No. 3 red", and that, therefore, the alteration or change from "3 red" to "2 red", as made by appellee, compelled the purchaser to pay eight cents per bushel more for the wheat stored than he would have paid had the memorandum remained as originally written on the back of the receipt. It is insisted, therefore, that the memorandum in controversy qualified the terms or provisions of the receipt, and that its alteration was material, and, under the law, constituted forgery of that instrument, and that the indictment under the alleged facts was sufficient. Counsel for appellee, however, insist that the indictment is bad, and some of the reasons which they assign are the following: "That the acts alleged to have been committed do not amount to, or constitute, an alteration, forgery or counterfeiting of the receipt. That the '3 red' indorsed upon the back of the receipt, was a mere memorandum, independent of the receipt, of no legal efficacy, the alteration of which could not prejudicially change any liability, because it creates no liability, and that despite the change of

the figure on the back the receipt remained unchanged. That such a memorandum, or writing, is not embraced within any class of instruments defined by our statute, as being the subject of forgery. That, assuming the truth of all matters alleged, the indictment discloses merely an attempt to obtain money by a false pretense." ·

The instrument charged in the indictment to have been altered and changed by appellee is disclosed to be the wheat receipt given by the railroad company to him, and not merely the memorandum indorsed thereon. The accused was not indicted for altering and forging the memorandum, but for altering and forging the receipt by means of the alteration made in the memorandum. The forgery of the receipt, as we have seen, is specifically charged to have been committed by altering or changing the figure "3" into a figure "2" so as to make the memorandum read "2 red" instead of "3 red" as originally written by the agent of the railroad company. The inquiry, therefore, is, was the indorsement of "3 red" a material part of the receipt, the alteration of which, under the statute of this State defining forgery, would constitute that crime? This statute is embraced in §2354 Burns 1894, §2206 Horner 1897, and when stripped of such words and phrases as have no material bearing upon this case may be said to read as follows: "Whoever falsely    *    *    *    alters, forges, counterfeits, *    *    *    or causes to be falsely *·    *    *    altered, forged, counterfeited, any    *    *    *    acquittance, or receipt either for money or property; * *·* with intent to defraud any person, body politic or corporate; or utters or publishes as true any such instrument or matter, knowing the same to be false, defaced, altered, forged, counterfeited, falsely printed, or photographed, with intent to defraud *.    *    *    shall be imprisoned," etc. An eminent authority on criminal law defines forgery at common law to be "the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of

State *v.* Hendry.

legal efficacy or the foundation of a legal liability." 2 Bishop's New Crim. Law §523. See, also, *Garmire* v. *State*, 104 Ind. 444. This, definition is not incompatible with our statute which defines the crime of forgery.

Unquestionably the receipt alleged to have been altered and forged is of such a character as, under the statute, would authorize the charge of forgery to be predicated thereon. As the crime in this case is charged to have been committed by means of the alteration of a genuine written instrument, it must, therefore, be clearly made to appear that the alleged alteration of the genuine document was material, and that its legal effect was thereby in some degree varied or changed to the prejudice of some person having or acquiring rights therein; for the law is well settled that forgery can not be successfully predicated upon an immaterial alteration of a written instrument. *Bittings* v. *State,* 56 Ind. 101; Gillett's Crim. Law (2nd ed.) §445; 2 Bishop's New Crim. Law, §573.

The instrument denominated "receipt", in the statute pertaining to forgery, must be held to include all that which when connected together constitutes such written receipt or instrument, and unless a memorandum or writing indorsed thereon or attached thereto is designed by the parties to import something into such receipt or instrument by which the legal effect of its terms or provisions is in some manner varied or affected, such memorandum can not be said to be connected with the receipt or instrument so as to form a part thereof, and any change or alteration in the memorandum indorsed thereon or attached thereto, under such circumstances, would not constitute an alteration or change of the legal effect of the receipt or instrument. Where it expressly appears that a memorandum indorsed on or attached to a written instrument, whatever the character of the latter may be, was made by one party or the other at the time of its execution, and that the same was intended to be aside or separate from the main design or object of the instrument

itself, then certainly, under such circumstances, the memorandum can not be said to enter into or form any part of the instrument upon which it is indorsed or to which it is attached, consequently any change or alteration thereof would not vary or affect the legal import of the instrument.

The history of the case at bar, as disclosed by the facts averred in the indictment, shows that the method of doing business in respect to the storage of wheat in the elevator of the railroad company at Angola was simply as follows: When the owner of wheat brought such grain for storage in said elevator, it was weighed by one Miller, who, after weighing it, would give to the owner, or seller, a slip, or check, which stated the number of pounds of wheat, name of the seller, and the name of the buyer to whose account the wheat was to be stored, with the figures "No. 2 red" or "No. 3 red", the latter indicating only the judgment of said weigher in respect to the quality or grade of the wheat. The seller, or owner, would then take this check, or slip, to the agent of the railroad company, who then made out and gave to him the railroad company's receipt for the grain delivered for storage, stating in such receipt the number of pounds of wheat, red or white, received, and to whose account for transportation the grain had been received, and providing further as to the duty and liability of the railroad company in the transportation and delivery of such grain, and on the back of such receipt the agent would write "2 red" or "3 red", as the case might be, merely to indicate the judgment of the weigher in regard to the grade of the wheat. The sole purpose of the indorsement of "2 red" or " 3 red" upon the receipt was to enable the purchaser to fix the market price at Angola of the wheat so stored. It appears that the receipt in question was issued by the railroad company to appellee, and the memorandum of "3 red" indorsed thereon in accordance with the method above stated, and that the purpose of the indorsement was to indicate the judgment of the weigher in respect to the

grade of the wheat. The receipt appears to be complete within itself, aside from the indorsement thereon, and makes no reference whatever to the memorandum in controversy, and the latter makes no reference to the receipt, and unaided by extrinsic facts each is apparently independent of the other, as much so as though the term "3 red" had been written on a separate piece of paper. Standing alone and unexplained the term may be said to be vague and uncertain in regard to its meaning or purpose, and cannot, as it stands, unexplained, be read into or construed as being a part of the receipt. When the memorandum is viewed or considered in the light of the extrinsic facts set out in the indictment, it becomes evident that the design thereof was to serve a purpose wholly different from the main object of the receipt, which related to the storage and transportation of the amount of wheat received, while the purpose or object of the term "3 red" related to the price to be paid by Patterson, the purchaser, to appellee, the seller. The memorandum so indorsed, it appears, might at the option of such buyer be accepted by him as evidence of the judgment of the weigher in regard to the grade of the wheat. As a consideration of the facts discloses that a change or alteration of the memorandum would not, under the circumstances, operate to vary or affect the receipt in any degree, consequently any change or alteration thereof can not be held to be a forgery of the receipt. It would seem that when this memorandum had been exhibited to the buyer by the seller, and the former had accepted it as indicating the grade of the wheat according to the judgment of the weigher, the purpose for which it was designed or intended, as shown by the facts, was accomplished. The alleged alteration of the memorandum, as previously asserted, did not operate to change or vary the legal effect of the receipt; therefore the charge made in the indictment, that the receipt was altered and forged by the appellee, was not sustained, under the facts, and the action of the court in quashing both counts

of the indictment was right. Possibly, as insisted, if appellee perpetrated a fraud upon Patterson by means of the false memorandum, he would be amenable to the provisions of the criminal statute relating to false pretenses, but that is not the question presented. Neither is the question as to whether the memorandum itself, when explained by intrinsic facts, is such an instrument of writing upon which forgery might be predicated, presented or decided, but our decision is confined to the particular facts set out in the indictment.

Judgment affirmed.