Rodney S. JORDAN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S04–8701–PC–OOO99.

Supreme Court of Indiana.

Jan. 22, 1987.

Susan K. Carpenter, Public Defender, Rick Ranucci, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

## ON CRIMINAL PETITION TO TRANSFER

DICKSON, Justice.

Following his guilty plea, defendant Rodney Jordan was convicted of forgery, a class C felony, Ind.Code § 35–43–5–2. His subsequent post-conviction relief petition was initially denied by the trial court, but that determination was reversed by the Court of Appeals, *Jordan v. State* (1985), Ind.App., 485 N.E.2d 1386, which found that the trial court erred in accepting the defendant's guilty plea because the factual basis before the court did not establish the crime as charged. The State has petitioned for transfer.

Initially facing a two-count information charging forgery and theft, defendant entered into a plea agreement pursuant to which he agreed to enter a plea of guilty to the charge of "forgery, class C felony." The agreement further provided that the State would dismiss Count II charging theft, and would also dismiss other pending charges for theft and forgery. At the guilty plea hearing, the following colloquy occurred.

> THE COURT: * * * You are charged in Count One with forgery, or uttering a forged instrument. It is alleged on or about the 16th day of July, 1982, in Marion County, you did unlawfully and with the intent to defraud make a written instrument, to-wit: a business invoice, of the following tenor, in such a manner that said written instrument is purported to have been made by the authority of James Associates Architects, who did not give authority, and then is set out a [sic] instrument, an invoice instrument on Hoosier Photo Supply in the amount of two hundred and thirty-two dollars and eighty-three cents ($232.83). Do you understand what you are charged with?

> MR. JORDAN: Yes.

> THE COURT: Uttering a forged instrument. When you enter a plea of guilty you're telling the court you are, that is true and you are guilty of that offense. Do you understand that?

> MR. JORDAN: Yes.

> * * * * * *

> THE COURT: ..., [W]hen you enter a plea of guilty you admit the offense of uttering a forged instrument, and therefore there will not be a trial and you will not have these rights that we are talking about. Do you understand what a guilty plea is?

MR. JORDAN: Yes.

\*  \*  \*  \*  \*  \*

THE COURT: Alright, we'll show that Mr. Jordan has been advised of his rights. The court will hear a factual basis for the plea. Would the Prosecutor tell me the facts of this case?

MR. LAZINSKY: Yes, Your Honor. On July 16th of 1982 a male subject entered the Hoosier Photo Supply Company at 80th and Zionsville Road, Indianapolis, Marion County. This individual ordered a number of printing supplies, represented himself to be an employee of James and Associates, an Indianapolis based architecture firm, signed, this individual signed a sales receipt under the name of Walter White, still representing himself to be a James and Associates employee and by that signature arranging to have the payment for the supplies to be billed directly to James and Associates. When James and Associates received the bill they contacted Hoosier Photo, informed them that they did not make that purchase, that they had no individual by the name of Walter White that was or ever had been an employee of the—Detective R.C. Davidson of the Indianapolis Police Department then showed a series of photographs to a Charlotte Mohr, who waited on this individual at Hoosier Supplies, and also a warehouse employee who assisted her, and both of these individuals identified a photograph of the Defendant as being the individual that made the purchase and signed the purchase agreement. And, in addition, an employee of Hoosier Supplies by the name of David Lee also identified the photograph of the Defendant and stated that he remembered the Defendant being a former employee of James and Associates. Approximately in 1977 he recalled seeing the Defendant there on several occasions when he was running his sales route, and in fact personnel records of James and Associates do reflect the employment of a Rodney Jordan during that period.

THE COURT: Is that what happened, Rodney?

MR. JORDAN: Yes.

THE COURT: Anything that the prosecutors say that is not true?

MR. JORDAN: Far as I knew.

THE COURT: It's all true, as far as you know?

MR. JORDAN: Uh huh.

I

In appealing the post-conviction court's denial of his petition, Jordan contends that nothing expressed in the purchase receipt indicated to Hoosier Photo that he (Jordan) represented James Associates. Since it was his oral misrepresentations which led to the illegal acquisition of goods, and the written instrument purported nothing in this regard, he argues that the actions did not constitute forgery.

■ We are mindful that at common law, forgery was defined generally as "the false making or material altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." Bowman v. State (1979), Ind.App., 398 N.E.2d 1306, 1307 (quoting State v. Hendry (1901), 156 Ind. 392, 59 N.E. 1041); See generally, 37 C.J.S. Forgery § 1 (1943). See also, Ind.Code § 35-1-124-1 (Burns 1975) [Repealed by Acts 1976, P.L. 148, § 24]. The common law is replete with cases drawing the fine distinction between the making of a false instrument and the false making of an instrument, the latter constituting forgery, the former being only a false pretense. See generally, 37 C.J.S. Forgery § 8 (1943); 36 Am.Jur.2d Forgery §§ 6–12. However, the common law definitions have been justifiably criticized. To hold that the making of a false instrument is not within the scope of the statute direct-

ed against the false making of an instrument requires an artificial and narrow interpretation which would defeat the apparent purpose of protecting the sanctity of the written instrument. *See, State v. Havens* (1952), 91 Ohio App. 578, 109 N.E.2d 48.

As Professor Perkins has noted:

One of the very significant aspects of forgery is that the immediate result is a false writing. (footnote omitted) Hence the definition quoted is unsatisfactory because it speaks of the *false making* of a writing, whereas the emphasis should be upon the making of a *false writing*. (footnote omitted). Whatever is done with intent to defraud is done fraudulently, so these forms of expression are interchangeable. (Emphasis in original).

R.M. Perkins, *Perkins on Criminal Law*, p. 341 (Second ed. 1969).

Ind.Code § 35–43–5–2 provides:

A person who, with intent to defraud, makes or utters a written instrument in such a manner that it purports to have been made:

(1) By another person;

(2) At another time;

(3) With different provisions; or,

(4) By authority of one who did not give authority; commits forgery, a class C felony.

We think that the express language of our current forgery statute makes it clear that our legislature intended to extend the common law offense of forgery to include crimes never before deemed to be within the scope of the offense. This has been done by shifting the focus from the "false making" of things that may be forged to the means whereby forgery may be accomplished. As our Court of Appeals stated in *Bowman v. State* (1979), Ind.App., 398 N.E.2d 1306, 1309, "[w]e believe that in keeping with the intent and spirit and the express wording of the new criminal code, and specifically the forgery section, that in addition to the old definitions of forgery, forgery includes every act which fraudulently makes an instrument appear what it is not."

Our application of the forgery statute is also aided by the broad definitions contained within the Code. " 'Utter' means to issue, authenticate, transfer, publish, deliver, sell, transmit, *present*, or use." Ind. Code § 35–41–1–2 (emphasis added). " 'Make' means to draw, prepare, *complete*, or alter any written instrument in whole or in part." Ind.Code § 35–43–5–1 (emphasis added). " 'Written instrument' means a paper, document, or other instrument containing written matter and includes ... other objects or symbols of value, right, privilege, or identification." *Id.*

We reject Jordan's contention that his signature did not constitute forgery because nothing expressed in writing purports his misrepresentation of himself as an agent of James Associates. Under our statute, it is not necessary for the written instrument to expressly purport to have been made by authority of one who did not give authority. It is only necessary that the instrument be made *in such a manner*. We view the signature in the context in which it was proffered to determine whether it falls within the purview of the forgery statute.

Jordan also argues that his actions did not constitute forgery because his signature was a mere formality rather than a condition precedent to receiving the goods. He points to the fact that he "received" the goods prior to signing the instrument acknowledging receipt. Thus his illegal acquisition was a result of his oral misrepresentation as an employee of James Associates. We disagree.

There is nothing to suggest that Jordan was free to leave Hoosier Photo with the supplies without signing the purchase receipt. In light of usual business practice and the facts presented here, it seems clear that his "completion" of the instrument by acknowledging receipt and his "presentment" of the completed instrument were preconditions for actually leaving the premises with the goods.

■ We hold that Jordan, acting with the intent to defraud, made (by "completing") a written instrument in such a manner that it was purported to have been by authority of one who did not give authority. The State established an adequate factual basis for Jordan's guilty plea, and the post-conviction court properly denied his petition for post-conviction relief on these grounds.

Having determined that the facts admitted by Jordan constituted forgery, we proceed to address his remaining contentions of reversible error.

## II

■ He asserts that there was an improper variance between the title and text of the information. Despite the extensive revision of our forgery statute, the offense of forgery, as previously and currently defined, in fact includes two distinct and independent crimes: *making* and *uttering* a forged instrument. *See, Sanford v. State* (1971), 255 Ind. 542, 265 N.E.2d 701; Kerr, *Survey of Recent Developments in Indiana Law*, 10 *Ind.L.Rev.* 1, 24, (1976). An examination of the information reveals that it was titled "Informations for Count I, Forgery, (Uttering)." The text of the information, however, alleged that Jordan "did unlawfully and with intent to defraud MAKE a written instrument." Jordan contends that he was thus charged with "Uttering a forged instrument" but convicted of forgery (Making). He argues that he was denied his right to due process because he was convicted of a crime that was neither charged nor a lesser included offense of the crime charged. We disagree.

■ In *Howard v. State* (1879), 67 Ind. 401, this Court confronted the same issue with respect to indictments and held that when the title of an indictment conflicts with the language of the text, the latter will control. *See also, Freeling v. State* (1975), 167 Ind.App. 534, 338 N.E.2d 644. We find the same rule also applicable to the charging information in the instant case. Jordan was charged with making a forged instrument, and convicted of that crime.

■ Jordan also contends that because of the variance, the court failed to adequately advise him of the nature of the charges against him. Although the information charged Jordan with "making" the instrument, the court, during the guilty plea proceedings, erroneously referred to the charge as "uttering." We do not find this to be prejudicial error. As discussed above, the State established an adequate factual basis at the guilty plea hearing which sufficiently conveyed to Jordan the nature of the offense for which he was charged. Moreover, the court read the text of the charging information verbatim. Jordan admitted all allegations, and it is clear that he was not misguided or in any way deceived into pleading guilty.

In a somewhat related argument, Jordan also contends that he received ineffective assistance of counsel because of his attorney's 1) failure to challenge the information for its failure to state facts supporting the crime charged, and 2) failure to realize that Jordan's actions did not constitute forgery. In light of our conclusion that Jordan's actions did indeed constitute forgery, and the charging information sufficiently stated facts supporting the charge, this argument must fail.

## III

■ Jordan claims that because the trial court failed to advise him of his right to a public trial, his guilty plea was involuntarily and unintelligently made.

The record reveals that the court advised Jordan of his right to an early and speedy trial, however the court did not use the word "public." Jordan was also advised that he had a right to a trial by twelve jurors, a right to confront witnesses, and a right to subpoena witnesses to testify on his behalf.

The advisements in the instant case closely parallel those given to the petitioner in *Garringer v. State* (1983), Ind., 455 N.E.2d 335. The petitioner there chal-

lenged his guilty plea because of the court's failure to use the words "public and speedy" when advising him of his right to trial by jury. The court did advise that a jury trial meant that other people would be present at the trial including witnesses testifying against or for the defendant. This Court held that the technical omission was not a fatal flaw because the record provided a sufficient basis to support the conclusion that petitioner was aware of his right to a public trial.

The circumstances of this case likewise lead us to conclude that the trial court adequately advised Jordan of the public nature of the trial being waived by pleading guilty. We thus find that his guilty plea was voluntarily and intelligently made.

## IV

Jordan contends that the post-conviction court's findings of fact and conclusions of law were erroneous in form and substance, and the resulting prejudice warrants reversal or remand in this case.

In its conclusions of law, the court stated, "The Petitioner, at the time of his guilty plea, was advised of his rights in compliance with Ind.Code § 35–35–1–1." Jordan points out that Ind.Code § 35–35–1–1 concerns representation of the defendant at the time of the guilty plea; the advisement of rights is contained in Ind. Code § 35–35–1–2. He contends that because the lower court rested its conclusion on the improper code section, the court's conclusion "disallows the reviewing court to dispose of the underlying issue on appeal and thus demands remand." Jordan cites *Roberts v. State* (1980), Ind.App., 406 N.E.2d 359, a case which involved a post-conviction court's failure to make adequate findings of fact and conclusions of law as required under Post-Conviction Rule 1, § 6. *Roberts* is inapposite to the issue at bar. The post-conviction court's inadvertent technical mistake in citing the wrong code section has in no way "disallowed" this Court from reviewing the record and determining whether Jordan was adequately ad-

vised of his rights before entering his guilty plea.

Jordan also contends that the post-conviction court failed to make specific findings of fact, as required by Post-Conviction Rule 1, § 6, because the court failed to find that 1) Jordan filed amendments to his petition for post-conviction relief, and 2) that an evidentiary hearing was held on those amendments. We have thoroughly reviewed the amendments to Jordan's petition and the transcript of the subsequent hearing. Jordan has not stated, nor can we even speculate, how he was in any way prejudiced by the omission of these facts from the court's findings.

## V

Finally, Jordan predicates error on the post-conviction court's entry denying Jordan's petition prior to issuing written findings of fact and conclusions of law. Jordan cites no applicable authority for such a proposition, nor can we find any. We are unpersuaded that this procedural practice evidences unreasonable judgment on the part of the post-conviction court or that it warrants remand or reversal in this case.

We hereby grant the State's Petition to Transfer, vacate the opinion of the Court of Appeals, and affirm the post-conviction court's denial of Jordan's petition.

GIVAN, C.J., and PIVARNIK and SHEPARD, JJ., concur.

DeBRULER, J., not participating.